# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| IRETHA L. LAWRENCE, ) </br> ) </br> Plaintiff, pro se, ) </br> ) </br> v. ) </br> ) </br> NORTH CAROLINA ) </br> NEUROPSYCHIATRY, P.A., ) </br> ) </br> Defendant. ) | **MEMORANDUM OPINION** </br> **AND RECOMMENDATION** </br> </br> 1:09-CV-791 |

This matter is before the court on a motion for summary judgment by Defendant (docket no. 15). Plaintiff has responded in opposition to the motion, and the matter is ripe for disposition. Furthermore, the parties have not consented to the jurisdiction of the magistrate judge. Therefore, the motion must be addressed by way of recommendation. For the following reasons, it will be recommended that the court grant Defendant's motion for summary judgment.

**BACKGROUND**

This case arises from a claim under 42 U.S.C. § 2000e (hereinafter "Title VII"), based on Plaintiff's termination from employment with Defendant on March 27, 2009. On April 13, 2009, Plaintiff filed a Charge of Discrimination with the EEOC. On September 29, 2009, the EEOC issued a Dismissal and Notice of Rights letter to Plaintiff. (Lawrence Dep. p. 38, lines 3-6, Ex. 3.) On October 9, 2009, Plaintiff filed this lawsuit against Defendant, in which she alleges that her employment was terminated based on her race.

**FACTS**[1]

Plaintiff's Hiring as a Billing Specialist and Personal Conflicts in the Office

Defendant hired Plaintiff on August 11, 2008, to work as a Billing Specialist. (Lawrence Dep. p. 49, lines 6-8.) In September and October 2008, Plaintiff's supervisor Jeni Groves began receiving reports that the billing department was not responding to questions and requests in a timely manner. (Groves Aff. ¶ 4.) On October 29, 2008, Groves emailed Plaintiff about these issues. (*Id.* ¶ 4, Ex. A.) Plaintiff denied any problem existed and complained that Groves' efforts to address the billing issues were "so unfair." (*Id.* ¶ 5, Ex. A.)

In October 2008, a dispute developed between Plaintiff and a co-worker, Andrea Chesser. (Groves Aff. ¶¶ 6-15.) At all relevant times, Chesser was the Practice Coordinator for Defendant's Charlotte office. (*Id.* ¶ 6.) As Practice Coordinator, Chesser was responsible for overseeing the billing and processing of insurance information for the Charlotte clinic. (*Id.* ¶ 7.) Plaintiff was required to coordinate with Chesser to ensure that billing was timely and efficient. (*Id.*)

In October 2008, Plaintiff contacted Samantha Cayot, a Referral Coordinator for Defendant, and instructed Cayot to provide copies of patients' insurance cards directly to Plaintiff.[2] (*Id.* ¶ 8.) Chesser subsequently sent an email to both Plaintiff

---

[1] The facts are taken from Defendant's recitation of the facts, as Plaintiff did not present her own statement of facts. Any factual disputes are noted herein.

[2] According to Defendant, Plaintiff exceeded her duties and authority by giving this instruction. (*See id.* ¶ 9.)

and Cayot, clarifying that all requests for patient insurance information should go through the receptionist Erica Henderson. (*Id.* ¶ 10.) Plaintiff called Chesser in response and left a voicemail that Chesser considered to be hostile. (Groves Aff. ¶ 11, Ex. B.) Chesser called Plaintiff on the telephone and told her that the two of them "needed to find a way to work together without attitudes on both sides." (*Id.*) Plaintiff responded by hanging up. (*Id.*)

On October 17, 2008, Groves separately met with both Chesser and Plaintiff to discuss their dispute. (Groves Aff. ¶ 12, Ex. C.) Groves informed them both that their conduct had been inappropriate, and that it was necessary that they work together. (*Id.*) Groves told them that if their personal disputes with each other continued, all future communications would have to go through Groves. (*Id.*)

The problems between Chesser and Plaintiff continued. For instance, in November 2008, Plaintiff sent Groves an email complaining about a dispute between Plaintiff and Chesser over verifying patient insurance. (*Id.* ¶ 13, Ex. D.) Then, on March 12, 2009, Chesser sent an email to the entire billing department, including Plaintiff, in which Chesser detailed ongoing complaints from patients who had been charged for missed appointments. (*Id.* ¶ 14.) Chesser asked that all future inquiries from Charlotte patients be directed to her. (*Id.*) Plaintiff responded by forwarding the email to Groves, writing that she did not "appreciate" Chesser telling her how to do her "JOB" and that she would like for Groves to address the matter. (*Id.* ¶ 15, Ex.

E.) Groves believed that Plaintiff was acting unprofessionally in both her actions and her tone.

Plaintiff's Violations of Defendant's Absenteeism Policy

Defendant's Absenteeism/Tardiness Policy, as set out in the Employee Handbook, states in part that "[u]nless you have prior written approval, your supervisor must be notified personally each day you are absent or tardy no later than one hour prior to your scheduled start time." (*Id.* ¶ 17, Ex. F.) Plaintiff was aware of this policy. (Lawrence Dep. p. 61, lines 19-25; p. 62, lines 1-10.) The Employee Handbook explicitly provides that "[f]ailure to properly report an absence or tardiness may be cause for disciplinary action up to and including termination." (Groves Aff. ¶ 18, Ex. F.) Examples of "unacceptable conduct" that are considered a cause for discipline in the Employee Handbook include "[b]eing absent without authorized leave, or repeated unauthorized late arrival or early departure from work." (*Id.*)

The Employee Handbook also states that Defendant "reserves the right to terminate an employee at any time for any reason with or without prior disciplinary counsel or notice," and that none of Defendant's policies are intended to "modify this 'at-will' employment," "promise progressive discipline," or "promise notice in circumstances where [Defendant] considers immediate termination or discipline to be appropriate." (*Id.* ¶ 19, Ex. F.)

On February 9, 2009, Plaintiff left work thirty minutes early, at 4:30 p.m. (Groves Aff. ¶¶ 20-21, Ex. G.) Plaintiff did not inform Groves directly, but instead

she had a co-worker tell Groves. (Lawrence Dep. p. 62, lines 20-25.) Groves did not learn of Plaintiff's early departure until after it happened. (Groves Aff. ¶ 21.) When Plaintiff returned to work, Groves informed Plaintiff that late notification by someone other than Plaintiff was inappropriate and contrary to Defendant's policy. (*Id.* ¶ 22.)

On March 10, 2009, Plaintiff left work an hour early. (*Id.* ¶ 23, Ex. H.) Groves was not told until after Plaintiff had left for the day. (*Id.*) Groves asserts that "[a]s a result of all of this," she decided to terminate Plaintiff's employment. (*Id.* ¶ 24.) Groves informed Plaintiff on March 27, 2009, that her employment was being terminated. (*Id.*; Lawrence Dep. p. 24, lines 18-20.) Later that day, Plaintiff sent the following email to Groves: "I WAS SMARTER THAN U THINK I HAVE REPORTED U TO THE MEDICAID AND MEDICARE FRAUD UNIT FOR ALL OVER PAYMENTS U RECEIVED $211,168.87 THAT INCLUDES ALL INS CO NOW HAVE A GREAT LIFE!" (Groves Aff. ¶ 25, Ex. I.) Neither Groves nor any employee or agent of Defendant responded. (Groves Aff. ¶ 25.) Defendant asserts that neither Medicare nor Medicaid has ever contacted Defendant regarding the fraud allegations alluded to in Plaintiff's email. (*Id.* ¶ 26.)

<u>Defendant's Evidence regarding Replacement of the Billing Specialist Position and Hiring and Termination of Other Employees</u>

After Plaintiff was terminated, Groves and Defendant's owner Dr. Thomas Gualteri decided to promote from within to fill the Billing Specialist position. (*Id.* ¶¶

27-28.)  Portia Bisiar, a white female who was then a receptionist in the Raleigh office, was given the job.  (*Id.* ¶ 28.)   Bisiar currently makes $2 an hour less than what Plaintiff had received as a Billing Specialist. (*Id.* ¶ 29.)

Defendant has presented evidence showing that over the past two years Defendant has fired two other employees due to concerns regarding their performance.  (*Id.* ¶ 30.)  In March 2009, Defendant terminated a white male, due to complaints from staff regarding his failure to collect patient information in a timely and efficient manner, and his excessive personal phone calls and text messages during working hours.  (*Id.*)  In June 2008, Defendant terminated a white female because of ongoing concerns about her work performance and personal conflicts with her co-workers.  (*Id.* ¶ 31.)

Over the past five years, Defendant has hired four other employees who are African-American: Eric Henderson, hired on November 7, 2006; Seshie Hargett, hired on July 9, 2008; Melissa Butler, hired on January 28, 2008; and April Gilfort, hired on August 4, 2008.  (*Id.* ¶ 32.)  Seshie Hargett resigned on June 11, 2009, when she moved to New York to attend graduate school.  (*Id.*)  April Gilfort resigned on September 30, 2009, after she accepted a position in Miami, Florida.  (*Id.*)  Melissa Butler quit for personal reasons in June 2008.  (*Id.*)

**STANDARD OF REVIEW**

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED.

R. CIV. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331 (Brennan, J., dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

**DISCUSSION**

McDonnell Douglas Test

Title VII provides that it is "an unlawful employment practice for an employer . . . to discharge . . . or otherwise to discriminate against any individual with respect

to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). Here, there is no direct evidence of race discrimination. When there is no direct evidence of discrimination, a plaintiff must establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class; (2) she was terminated; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of her termination; and (4) the position remained open or was filled by a similarly qualified applicant outside her protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 213-14 (4th Cir. 2007).

Once a plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for the challenged action; however, this burden "is one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Holland*, 487 F.3d at 214. If the employer demonstrates a legitimate, nondiscriminatory reason, the presumption of unlawful discrimination created by the *prima facie* case "drops out of the picture," and the burden shifts back to the employee to show that the given reason was merely a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993); *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 57-58 (4th Cir. 1995). Pretext may be established "by proving that the defendant's explanation for an employment decision is 'unworthy of credence' or that

the defendant's explanation is false." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 269 (4th Cir. 2005) (quoting *Reeves*, 530 U.S. at 147).

Finally, the responsibility of proving that "the protected trait . . . actually motivated the employer's decision" remains with the plaintiff at all times. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Thus, it is not enough for a plaintiff merely to raise an inference of discrimination. Rather, a plaintiff bears the ultimate burden of proving that the decision was made not on any proffered grounds but instead on the basis of impermissible discriminatory grounds. *Reeves*, 530 U.S. at 143. To overcome a motion for summary judgment in such a case, a plaintiff must provide direct or circumstantial evidence "of sufficient probative force" to show a genuine issue of material fact exists as to this question. *Goldberg v. B. Green & Co.*, 836 F.2d 845, 848 (4th Cir. 1988).

<u>Plaintiff's Race Discrimination Claim</u>

Defendant has conceded that Plaintiff is a member of a protected class (black); that she was terminated; and that she was replaced by someone outside the protected class. Defendant contends, however, that Plaintiff has failed to provide evidence of the third factor of the McDonnell Douglas test–i.e., that she was performing her job duties appropriately when she was terminated. It is this third factor in establishing a *prima facie* case which "screen[s] out . . . [and] eliminate[s] the most common, nondiscriminatory reasons for the employer's conduct." *Warch*

*v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 514 (4th Cir. 2006). To meet this third factor, a plaintiff must do more than show that he is "qualified" for the job. *Id.* To avoid summary judgment, a plaintiff must provide evidence of "meeting his employer's legitimate job expectations . . . ." *Id.* The perceptions of the plaintiff, his co-workers, or other third parties concerning the plaintiff's job performance are irrelevant. *Id.* at 518; *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000).

I find that Plaintiff has failed to show that she was meeting Defendant's legitimate expectations when her employment was terminated or that Defendant's stated reasons for firing her were merely a sham to cover a discriminatory purpose. Plaintiff has presented no evidence in opposition to the summary judgment motion showing that she was meeting Defendant's legitimate expectations when she was fired. By contrast, Defendant has presented evidence showing that Defendant fired Plaintiff because of her violation of Defendant's absenteeism policies and her unprofessional conduct in dealing with personal conflicts with other co-workers. Therefore, Plaintiff has failed in making a *prima facie* case of racial discrimination.

Assuming *arguendo* that Plaintiff provided a *prima facie* case of discrimination, Defendant has articulated legitimate, non-discriminatory reasons for Plaintiff's termination, and Plaintiff has failed to demonstrate that these reasons were false or unworthy of credence. Indeed, Plaintiff has presented no evidence whatsoever that

would tend to show that Defendant's stated reasons for firing her were pretextual.[3]

Moreover, and significantly, Plaintiff admitted in her deposition that she did not believe that Defendant had fired her because of her race. In her deposition, Plaintiff specifically testified that she did not believe that she was terminated because of her race:

> Q: Do you believe you were terminated because of your race?
> A: Really, I don't, but it is what it is.

(Lawrence Dep. p. 43, lines 22-24.) She further testified that no one at work had ever said anything that she had considered racist or that was related to her race. (Lawrence Dep. p. 32, lines 7-13.) Moreover, Plaintiff specifically testified in her deposition that she believes that the sole motivation for her termination was so that Groves could give the position to Portia Bisiar, who was a close friend of Groves:

> Q: And you believe that you were terminated because Jeni Groves wanted to put her friend in [Plaintiff's former] job?
> A: Yes, I do.
> Q: And that was the only reason [Groves] terminated you?
> A: Yes.

(Lawrence Dep. p. 46, lines 6-10.) I note even if Plaintiff's allegation regarding Groves' desire to hire a friend is accurate, this does not amount to a Title VII

---

[3] Indeed, in her two-page response brief, Plaintiff has presented no factual evidence in opposition to the summary judgment motion. She merely complains that she is unable to "defend" herself because she does not have an attorney, and she alleges that "[w]hether it was intentional or not, Jeni Groves paid Portia Psair (sic) if not equal or more pay, with no experience." (Pl.'s Response Br., unnumbered p. 2.) As the court has noted, *supra*, Defendant has asserted, however, that Bisiar was actually paid less than Plaintiff had been paid in the Billing Specialist position.

violation. *See Morris-Belcher v. Hous. Auth. of City of Winston-Salem*, No. 1:04cv255, 2005 WL 1423592, at *7 (M.D.N.C. June 17, 2005) (stating that "the law is clear that giving preferential treatment to friends or social acquaintances does not violate Title VII") (citing *Autry v. N.C. Dep't of Human Res.*, 820 F.2d 1384, 1385 (4th Cir. 1987)).

In sum, Plaintiff has expressly admitted that she does not believe she was fired because of her race, and she has offered no evidence to rebut Defendant's stated, legitimate reasons for firing her. For all these reasons, it will be recommended that Defendant's motion for summary judgment be granted.

**CONCLUSION**

For the reasons stated herein, **IT IS RECOMMENDED** that the court **GRANT** Defendant's motion for summary judgment brought (docket no. 15) and dismiss this action with prejudice.

_____
WALLACE W. DIXON
United States Magistrate Judge

December 17, 2010